# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CRIMINAL ACTION NO: 4:18-CV-00008**

**UNITED STATES OF AMERICA**                                **PLAINTIFF**

**V.**

**GAZARR MENDELA DUDLEY**                                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Suppress Evidence [DN 22]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's Motion to Suppress is **DENIED**.

### I. BACKGROUND

In October 2017, Owensboro Police Department ("OPD")—working in conjunction with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")—organized a controlled buy of methamphetamine. A confidential informant purchased 2 to 3 grams of methamphetamine from Defendant Gazaar Mendela Dudley. During the buy, police and ATF monitored while the confidential informant met Dudley in a car parked in front of his home. ATF Special Agent Dean Clark and OPD Detective Ben Fleury testified at the suppression hearing because both officers monitored the controlled buy, in addition to investigating Dudley previously.

Two months later, on December 20, 2017, police encountered Dudley as he drove into a gas station parking lot. Again, Special Agent Clark and Detective Fleury were both present. While Dudley's girlfriend Nina Williams went inside the store to make purchases, Dudley waited in a car that officer recognized as the same vehicle used during the controlled buy. Police determined that Dudley had an outstanding arrest warrant for unpaid child support and decided to effect the arrest.

Dudley was removed from the vehicle and placed under arrest. Ms. Williams was briefly detained but released soon after. The police impounded the vehicle which was owned by Ms. Williams. Special Agent Clark and Detective Fleury both testified that they knew that the vehicle did not belong to Dudley but seized the vehicle nonetheless because they believed it to be subject to forfeiture because they recognized it to be the car used in the October methamphetamine transaction. Pursuant to OPD policy, police performed an inventory search on the vehicle and discovered a leather jacket. Inside the leather jacket, officers found multiple bags of marijuana, a bag of suspected methamphetamine, and a pistol, along with Dudley's identification card. Based on this evidence, a grand jury indicted Dudley with possession with intent to distribute methamphetamine, using/carrying a firearm during and in relation to a drug trafficking crime, and being a felon in possession of a firearm.

Dudley filed the present Motion to Suppress, asking the Court to suppress the drugs and weapon obtained from the inventory search of the vehicle, arguing police should not have seized and searched the vehicle under the Constitution or Kentucky statue.

## II. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend. IV. Evidence obtained in violation of a defendant's constitutional rights bars the use of that evidence against him at trial. *Mapp v. Ohio*, 367 U.S. 643 (1961). A person who claims to have been aggrieved by an unlawful search or seizure bears the initial burden of production and persuasion to suppress evidence. *United States v. Smith*, 783 F.2d

648, 650 (6th Cir. 1986). The defendant must present a prima facie showing of a Fourth Amendment violation, i.e., that a government official, acting without a warrant, subjected him to either an arrest or a search and seizure. *United States v. Bayless*, 921 F. Supp. 211, 213 (S.D. N.Y. 1996) (citing cases), aff'd, 201 F.3d 116 (2d Cir. 2000). Once the defendant has made a prima facie showing, the government then has the burden of demonstrating by a preponderance of the evidence that the search or seizure was not a constitutional violation. *United States v. Bradley*, 163 F. App'x 353, 357 (6th Cir. 2005).

### III. DISCUSSION

Dudley moves the Court to suppress the evidence obtained from the search of his girlfriend's car. First, Dudley argues that the police did not have statutory authority to seize the car belonging to Ms. Williams. In Kentucky, forfeitable contraband includes vehicles "which are used, or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of" controlled substances. Ky. Rev. Stat. § 218A.410(h). Dudley argues that while Ms. Williams' car may have been the location where he sold controlled substances to a confidential informant, the police had no evidence that the vehicle was used to *transport* the methamphetamine. On this point, Dudley argues that the vehicle was not forfeitable contraband since the statute "requires more than mere 'involvement' of the vehicle in a drug crime." (Def.'s Resp. [DN 39] at 8).

The evidence shows that a controlled buy was made from the Defendant while he was seated in the subject vehicle, which was at that time parked in a driveway. The vehicle facilitated the sale of contraband in that respect, but there is no direct evidence that the vehicle was used to transport the contraband either before or after the controlled buy. However, one would logically infer that the vehicle had been used for that purpose.

In somewhat similar circumstances, the Kentucky Supreme Court, in *Osbourne v. Commonwealth*, determined a vehicle was subject to forfeiture under KRS § 218A.410(h) despite a lack of proof that the vehicle was used to transport contraband. 839 S.W.2d 281 (Ky. 1992). The vehicle was not in running condition at the time contraband was found in it. There was evidence that the Defendant had been seen previously driving the vehicle but the only evidence of its use in facilitating drug trafficking was that contraband was found in it. The court held, "It is sufficient under KRS 218A.410(h) and (j) to show a nexus between the property sought to be forfeited and its use to facilitate violation of the controlled substances act." *Id.* at 283. Therefore, in this case, even if officers had no reason to believe that Ms. Williams' car was used to transport drugs, the fact that Dudley used the car to facilitate the sale of methamphetamine seems sufficient to render Ms. Williams' vehicle forfeitable under Kentucky law.[1]

Next, Dudley argues that the search and seizure of the vehicle violated his constitutional rights. As for the seizure of the vehicle, "the Fourth Amendment does not require police to obtain a warrant before seizing an automobile from a public place when they had probable cause to believe that it was forfeitable contraband." *United States v. Musick*, 291 Fed. App'x 706, 722 (6th Cir. 2008). Under the federal forfeiture statute, forfeitable contraband includes vehicles "which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances. 21 U.S.C. § 881(a)(4). Dudley complains that the police had no specific identifying information about the vehicle other than the confidential informant's description that it was "a little white car. Maybe a little white Ford." (Def.'s Resp. at 3). Still, even if police had nothing more than this basic description of the vehicle,

---

[1] Alternatively, a plausible argument could be made that the vehicle constitutes "equipment" subject to forfeiture under KRS 218A.410(f) or a "container" subject to forfeiture under KRS 218A.410(g).

4

this is sufficient to provide the police with probable cause to believe it was the same car Dudley previously used when selling a controlled substance to a confidential informant.

The Court also finds the search to be constitutional. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Inventory searches are one these established exceptions to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Dudley admits that while the Fourth Amendment typically permits an inventory search of a seized vehicle, an inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence." (Def.'s Resp. at 5) (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990)). He believes that the only explanation for police seizing Ms. Williams' vehicle was "investigating the contents of the car to see if they could stumble upon evidence of a crime." (*Id*. at 6). For this reason, Dudley argues, "The officer's true motive for the search should therefore be determined, and if it is impermissible the fruit of the search should be suppressed." (*Id*. at 5).

The Court finds the inventory search was valid. "In order to be deemed valid, an inventory search may not be undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). The evidence has not shown that officers had an impermissible investigatory motivation when searching Ms. Williams' car. Instead, the evidence reflects that police used OPD standard procedures in performing an inventory search after the vehicle was properly seized. The Sixth Circuit has been clear that "the mere fact

that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search." *Smith*, 510 F.3d at 651.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress is **DENIED**.

cc: counsel of record

*Joseph H. McKinley*
Joseph H. McKinley Jr., Senior Judge
United States District Court

July 24, 2019